UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:09-cv-00033-KKC

FIFTH THIRD BANK                                                                                                                   PLAINTIFF

v.                           **MEMORANDUM OPINION AND ORDER**

ROBERT K. WAXMAN, VANDALAY
RACING, LLC and DEBRA WAXMAN                                          DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Partial Summary Judgment filed by Plaintiff Fifth Third Bank ("Fifth Third"). Rec. 34. This case stems from several loans Fifth Third made to Robert Waxman and Vandalay Racing, LLC ("Vandalay") which Fifth Third claims are in default. These loans were guaranteed by Robert Waxman, Debra Waxman and Vandalay (collectively "Defendants"). Defendants have filed a response in opposition to the motion for partial summary judgment and Fifth Third has submitted a reply in further support of its motion. Rec. 39, 48. Because this matter has been fully briefed, it is ripe for decision. For the reasons set forth below, the Court will grant Fifth Third's motion for partial summary judgment.

I.      **FACTUAL BACKGROUND**

Fifth Third is a Michigan banking corporation and is the holder and owner of the notes and loans made to Defendants. Rec. 7, Amended Complaint at ¶ 1. Robert Waxman is a resident of Ontario, Canada and has conducted business in Kentucky including entering into a loan agreement with Fifth Third at issue in this action. *Id.* at ¶ 2. Debra Waxman is also a

resident of Ontario, Canada and is married to Robert. *Id.* at ¶ 4. Along with her husband, Robert, Debra Waxman has engaged in business in Kentucky. Her business transactions include providing personal guarantees to several loans made by Fifth Third to Vandalay. *Id.* Vandalay is a Kentucky limited liability company with its principal place of business in Ontario, Canada. *Id.* at ¶ 3. Daniel Waxman is Robert and Debra Waxman's son and the sole member of Vandalay. Both Robert Waxman and Vandalay are in the horse business.

**A. The Loans**

**1. Loan Number 0904216991-26**

Fifth Third made four loans to the Defendants that are at issue in this action. The first loan, in the amount of $1,250,000.00, was made to Robert Waxman and guaranteed by Vandalay. Robert Waxman entered into a Revolving Note agreement and an Amended and Restated Loan and Security Agreement with Fifth Third on July 1, 2006. Rec. 34, Exh. 1 Revolving Note and Exh. 2 Amended Security Agreement. On the same day, Vandalay executed and delivered a guaranty for the loan to Fifth Third. Rec. 34, Exh. 4, Vandalay Guaranty. On September 1, 2007, Robert Waxman and Fifth Third entered into an Amendment to the Revolving Note extending the maturity date of the loan to February 1, 2008. Rec. 34, Exh. 3 Amendment to Revolving Note. On March 24, 2008, Fifth Third again extended the maturity date of the loan to May 1, 2008. During the course of his deposition, Robert Waxman acknowledged that he signed all of the aforementioned agreements. Rec. 49, Robert Waxman Depo. at 33-38. He also acknowledged that he defaulted on the loan and failed to make required payments. *Id.* at 57-58. During Daniel Waxman's deposition, he acknowledged that Vandalay failed to make the payments required under the terms of the guaranty after Robert Waxman defaulted on the loan.

Rec. 49, Daniel Waxman Depo. at 21-22.

**2. Loan Number 0905312609-26**

On September 25, 2007, Vandalay entered into a Revolving Note agreement and an Amended and Restated Loan and Security Agreement with Fifth Third for a $750,000.00 loan. Rec. 34, Exh.. 5 Revolving Note Agreement and Exh. 6 Amended Security Agreement. Debra Waxman executed and delivered a guaranty to Fifth Third for this loan. Rec. 34, Exh. 7 Guaranty. Daniel Waxman acknowledges that Vandalay failed to timely make the required loan payments and that the loan became delinquent. Rec. 49, Daniel Waxman Depo. at 21-22. While being deposed, Debra Waxman acknowledged that she executed the guaranty in question and failed to make timely payments on the guaranty. Rec. 49, Debra Waxman Depo. at 7-9, 11-13.

**3. Loan Number 0905312609-42**

On April 1, 2007, Vandalay entered into a Term Note agreement and an Amended and Restated Loan and Security Agreement with Fifth Third for a $200,000.00 loan. Rec. 34, Exh. 8 Term Note and Exh. 9 Amended Security Agreement. Daniel Waxman acknowledges that he entered into this agreement. Rec. 49, Daniel Waxman Depo. at 19. Debra Waxman also executed and delivered a guaranty on this loan. Rec. 34, Exh. 10, Guaranty. It is undisputed that Vandalay failed to make timely payments on the loan. Rec. 49, Daniel Waxman Dep. at 21-22. Furthermore, Debra Waxman has admitted that she received a demand for payment from Fifth Third and failed to make timely payments on the guaranty. Rec. 49, Debra Waxman Dep. at 11-13.

**4. Loan Number 0905312609-67**

On January 2, 2008, Vandalay entered into a Revolving Note agreement and an Amended

and Restated Loan and Security Agreement with Fifth Third for a $150,000.00 loan. Rec. 34, Exh. 11 Revolving Note Agreement and Exh. 12 Amended Security Agreement. Daniel Waxman acknowledges that he entered into the agreement and executed the relevant documents. Rec. 49, Daniel Waxman Dep. at 20-21. Debra Waxman executed and delivered a guaranty on this loan to Fifth Third. Rec. 34, Exh. 13 Guaranty. There is no dispute that Vandalay failed to make timely payments on the loan and that the loan entered default. Rec. 49, Daniel Waxman Dep. at 22. Debra Waxman acknowledges that when called upon to make payment under the terms of the guaranty, she failed to do so. Rec. 49, Debra Waxman Dep. at 11-13.

**B. Fifth Third's Motion for Partial Summary Judgment**

Fifth Third asserts that it is entitled to summary judgment as a matter of law regarding the loan defaults because there is no genuine factual dispute that Defendants have breached their contractual obligations under the loan agreements. Rec. 34 at 9. Defendants have not disputed the amounts that are due and owing, challenged the validity of the loan documents, or filed any counterclaims. As to all guaranties, both Debra Waxman and Vandalay have acknowledged entering into the guaranties and failing to make the required payments. *Id.* Accordingly, Fifth Third asks this Court to enter summary judgment as to the amounts due on the loans and for an award of attorneys' fees, costs and expenses related to the collection of the loans as provided for in the loan agreements. *Id.* However, Fifth third requests that the Court reserve determination of the exact amount of the costs until after partial summary judgment is entered.[1]

---

[1] Fifth Third represents that it will then submit affidavits setting forth their legal fees and any expenses incurred through the date of the judgment so that these amounts can be reflected in the final judgment. Fifth Third also requests that the judgment provide for future attorneys' fees and costs and expenses, which may be incurred in connection with the post-judgment collection process.

Defendants contend that summary judgment is not appropriate and allege that Fifth Third is guilty of repeated misrepresentations including various breaches of fiduciary duties. Defendants further allege that the loans at issue only entered default because Fifth Third promised Robert Waxman that he could reinvest certain horse racing earnings into his business. Defendants claim that Robert Waxman relied on this promise in purchasing several yearlings for his business, only to have Fifth Third renege on its promise by applying the funds to pay down his outstanding loans. Robert Waxman claims that the litigation that resulted from his inability to pay for these yearlings ruined his business and negated his ability to repay his loans. Defendants also accuse Fifth Third of dragging Vandalay and Debra into a messy situation which Fifth Third's wrongful conduct created.

Defendants assert that summary judgment is improper as to Fifth Third's claims against Robert Waxman because of the bank's misrepresentations to him. Defendants further claim that because Fifth Third breached its fiduciary duties and the duties of good faith and fair dealing, any subsequent breach by Defendants should be excused. Defendants also assert that recovery is barred by the doctrine of unclean hands and failure to mitigate. As to Debra Waxman, Defendants assert that Fifth Third breached an overarching agreement between the parties that Debra's guaranties would never be enforced. On this basis, Defendants assert that the guaranties were fraudulently induced. Finally, with regard to Vandalay, Defendants assert that summary judgment is precluded by Fifth Third's failure to mitigate its damages.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to inform the district court of the basis for its motion and identify those portions of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden may be met by the moving party by demonstrating the absence of evidence supporting any one or more of the essential elements of the non-moving party's claim. *Id.* at 322-25. Once this initial burden has been met, the non-moving party must present specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

A party opposing a motion for summary judgment cannot "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A scintilla of evidence in support of the plaintiff's position is not enough because there must be enough evidence to allow a jury to reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). This requires presentation of some evidentiary material beyond the pleadings in support of the plaintiff's position. *Celotex*, 477 U.S. at 324. Consequently, summary judgment must be entered against a party failing to make an adequate showing to establish the existence of an essential element to that party's case, for which it bears the burden of proof at trial. *Id.* at 322.

However, when considering a motion for summary judgment, the court must view the facts contained in the record and draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986); *see also 60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The court should not weigh the evidence or determine the truth of any disputed matter because the only determination for the court is whether sufficient evidence exists from which a jury could reasonably find for the non-moving party. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). What the court must ultimately determine is whether there is a sufficient dispute about the evidence to require submission to the jury, or whether the evidence favors one side so strongly that it is entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 251-52.

**III. ANALYSIS**

In this case, Defendants have not disputed that they executed the loan agreements and guaranties in question. Furthermore, they have not disputed that they received the loan proceeds from Fifth Third in accordance with the loan agreements. During the course of their depositions, Defendants also acknowledged that the loans are in default. Finally, Defendants have not disputed Fifth Third's valuation of the amounts due. According to Fifth Third, as of February 10, 2010, this amount was $2,632,352.18, excluding additional interest, attorneys' fees and costs. However, Defendants have asserted several defenses in support of their position that summary judgment is inappropriate at this time.

**A. Robert Waxman's Defenses**

Defendants contend that granting Fifth Third's motion is inappropriate because of misrepresentations that Fifth Third made to Robert Waxman. In October 2002, Robert Waxman was informed that he would receive $800,000 based on the performance of one of his racehorses. Rec. 49, Robert Waxman Dep. at 49. Robert Waxman claims that he told Mr. Berge, an

7

employee of Fifth Third, that he desired to purchase yearlings in the November Standardbred Horse Sales Company ("Standardbred") auction to use for his business. *Id.* Robert Waxman claims that Mr. Berge told him that this bonus money could be used to pay for the horses. *Id.* In January 2003, after purchasing the horses, Robert Waxman brought a check for $800,000 to Fifth Third. *Id.* at 50-51. During his deposition, Robert Waxman testified that he intended the check to be put in his personal account to allow him to pay the purchase price for the yearlings. *Id*. However, he claims that when he got to the bank, Mr. Berge told him that "he had been instructed by superiors to take the check and put it against the loan and that [Robert Waxman] couldn't use it for the purchase of the yearlings." *Id.* at 50. Robert Waxman claims that this "started a chain of events that...completely ruined [his] horse business over a number of years with extensive litigation costs, [and] credit problems." *Id.*

**1. Breach of Fiduciary Duty**

Robert Waxman claims that Fifth Third breached its fiduciary duty to him by misrepresenting that the bonus money could be used to buy additional horses for his business. Robert is correct that under Kentucky law, a fiduciary relationship may be created between a bank and a borrower. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 485 (Ky. 1991). Giving Robert the benefit of the doubt, the Court will presume for purposes of the summary judgment motion that a fiduciary relationship existed between Fifth Third and Robert. However, the question remains whether Fifth Third's alleged breach of its fiduciary duties precludes the entry of summary judgment in Fifth Third's favor.

As discussed above, Robert Waxman claims that he relied on representations from Mr. Berge of Fifth Third that he could apply the bonus money to the purchase of several yearlings

from Standardbred. He asserts that after making these representations, Fifth Third breached its fiduciary duties by instead applying these funds to pay down his loans, thereby starting a chain of events which effectively destroyed his business. Furthermore, Robert Waxman claims that Fifth Third breached its fiduciary duties by misrepresenting that the loan guaranties executed by Debra would never be enforced.

Initially, the Court notes that no counterclaims have been filed in this action against Fifth Third for breach of fiduciary duty or fraud. Robert also has not asserted breach of fiduciary duty as an affirmative defense. Second, Robert has not presented any authority supporting his position that a breach of fiduciary duty by Fifth Third precludes the entry of summary judgment on the loans which Robert Waxman, Debra Waxman and Vandalay acknowledge are in default. In fact, the law appears to support the opposite conclusion.

In *Bale v. Mammoth Cave Production Credit Association*, 652 S.W. 2d 851 (1983), the Supreme Court of Kentucky addressed a similar argument. On appeal, the debtors argued that enforcement of the promissory notes they entered into was barred by the creditor's breach of fiduciary duty. *Id.* at 853-54. Like Robert Waxman, the debtors in *Bale* relied on *Henkin, Inc. v. Berea Bank & Trust Co.*, 566 S.W.2d 420 (Ky. App. 1978). However, the Supreme Court of Kentucky rejected their argument and explained that:

> [i]n our view, *Henkin* does not support Bale and Guilfoil's theory in this case, First, *Henkin* does not stand for the proposition that a bank's breach of fiduciary duty to its customer may serve as an affirmative defense to an action to enforce a promissory note owed by the customer to the bank. On the contrary, *Henkin* only recognizes that such a breach may afford the maker of the note a basis for asserting a counterclaim for damages in such an action.

*Id.* at 854.

As noted above, none of the Defendants in this action have asserted a counterclaim against Fifth Third for breach of fiduciary duty. Furthermore, the breach of fiduciary duty alleged by Robert Waxman does not appear to have affected the execution or validity of the loan agreements entered into by him with Fifth Third. Because a bank's breach of fiduciary duty does not serve as an affirmative defense to an action to enforce a promissory note owed by a bank's customer, this argument does not preclude the entry of partial summary judgment at this time. *See Bale*, 652 S.W. 2d at 854.

**2. Duty of Good Faith and Fair Dealing**

Robert Waxman next argues that his breach is excused by Fifth Third's prior breach of its duty of good faith and fair dealing. The duty of good faith and fair dealing is implied in every contract and requires parties to a contract to do everything necessary to carry out the terms of the contractual agreement. *Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). This argument mirrors the argument discussed above concerning Fifth Third's alleged breach of fiduciary duty. Robert Waxman claims that he would have been able to make required loan payments in a timely manner if Fifth Third had not destroyed his business with its misrepresentations related to the use of the bonus money to purchase additional horses for his business.

Initially, the Court notes that Robert has not filed a counterclaim for the breach of the duty of good faith and fair dealing. Furthermore, while each contract implicitly contains a covenant of good faith and fair dealing, this covenant does not prevent contracting parties from exercising their contractual rights. *Id.* at 11; *see also Durbin v. Bank of the Bluegrass & Trust Co.*, 2006 WL 1510479 (June 2, 2006 Ky. App. 2006)(unpublished); *see also Hunt Enters. v.*

10

*John Deere Indus. Equip. Co.*, 18 F.Supp.2d 697, 700 (W.D. Ky. 1997)("It is not 'inequitable' or a breach of good faith and fair dealing in a commercial setting for one party to act according to the express terms of a contract for which it bargained.").

In this case, Fifth Third acted in accordance with the terms of the loan agreements executed by Robert Waxman by applying the bonus money to pay down his loans. Accordingly, Fifth Third did not violate the covenant of good faith and fair dealing. Furthermore, Defendants have not produced any written documentation that Fifth Third or Mr. Berge informed Robert Waxman that he could use the bonus money to purchase additional yearlings for his business. However, Robert Waxman admitted during his deposition that when he delivered the $800,000 check, Mr. Berge informed him that the check was going to be used to reduce his line of credit. Rec. 49, Robert Waxman Dep. at 49-56. He also admits that his understanding that the bonus money could be used to reinvest in his business was never put in writing. *Id.* at 53-54. Finally, Robert acknowledges that after he delivered the check to Fifth Third and was informed how the bonus money was to be used, he never wrote to Mr. Berge or Fifth Third alleging that this treatment of the funds was contrary to the parties' agreement. *Id.* at 55-56.

Because Fifth Third acted within its contractual rights by applying the bonus money to reduce Robert's line of credit, the Court finds that the asserted breach of the duty of good faith and fair dealing does not preclude the entry of partial summary judgment.

**3. Unclean Hands**

Robert Waxman next asserts that Fifth Third is not entitled to relief because it has "unclean hands" due to the misrepresentations it made to him. Kentucky Courts have recognized that:

> [t]he unclean hands doctrine is a rule of equity that forecloses relief to a party that has engaged in fraudulent, illegal, or unconscionable conduct but does not operate so as to repel all sinners from courts of equity. The transaction with respect to which there was misconduct must be connected with the matter in litigation in order for the doctrine of unclean hands to apply....[A]lthough the operation of the maxim is broad, it is not without limitation and will not apply to all misconduct or to every act smacking of inequity or deceit in relation to the matter in which relief is sought.

*Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. App. 2007).

It is unclear whether the "unclean hands" doctrine is available in this kind of case, where Fifth Third has not sought equitable relief. Robert Waxman has provided no authority supporting his position that the "unclean hands" doctrine applies in this case. In addition, Fifth Third's conduct appears to be consistent with its written contractual rights. In fact, during his deposition, Robert Waxman admitted that Fifth Third was permitted to apply the bonus money to reduce his line of credit and that he was informed of Fifth Third's intent to do so when he delivered the $800,000 check to Mr. Berge.

To the extent that the "unclean hands" defense relates to Fifth Third's attempts to enforce the loan guaranties executed by Debra Waxman, such actions were clearly permitted by the terms of the guaranties indicating that payment could be sought from her in the event of a default. Finally, even assuming that the "unclean hands" doctrine were applicable to Fifth Third's legal claims for relief, the Court finds that on these facts it would not bar the relief requested by Fifth Third.

**4. Duty to Mitigate Damages**

Robert also asserts that Fifth Third is not entitled to partial summary judgment because it failed to mitigate its damages. Under Kentucky law, non-breaching parties are required to take reasonable efforts to mitigate their damages. *See Smith v. Ward*, 256 S.W.2d 385, 388 (Ky.

1953); *Davis v. Fischer Single Family Homes, Ltd.*, 231 S.W.3d 767, 780 (Ky. App. 2007). Once again, this defense is premised on Robert Waxman's argument that Fifth Third orally represented that he could reinvest the $800,000 bonus money into his business. Robert Waxman asserts that this misrepresentation ultimately caused Fifth Third's damages by leading to his costly and time consuming litigation with Standardbred, which auctioned off the horses that he bought in reliance on Fifth Third's misrepresentations. Robert further asserts that after Fifth Third informed him that it was applying the Illinois bonus money to reduce his line of credit, it had numerous opportunities to settle the Standardbred litigation that he was involved in. He claims that by failing to do so Fifth Third placed his racing license in jeopardy which prevented him from earning profits from his business.

The Court is not persuaded by this argument. Once again, Defendants have cited no law from this jurisdiction or any other standing for the proposition that Fifth Third was obligated to settle the Standardbred litigation on Robert's behalf in mitigating its damages. As discussed earlier in this opinion, to the extent that Robert was damaged by Fifth Third's alleged misrepresentations, he could have filed a counterclaim alleging an entitlement to an offset. However, he failed to do so. Furthermore, it is well established that the "duty to mitigate is not absolute; recovery is diminished only to the extent that the plaintiff fails to mitigate the damages as they would be mitigated by an ordinary, reasonable person under similar circumstances." *Morgan v. Scott*, 291 S.W.3d 622, 641 n.49 (Ky. 2009). Accordingly, the failure to mitigate by Fifth Third would not have precluded its recovery, although it might have diminished it to the extent that reasonable efforts at mitigation were not undertaken.

The burden of proof of establishing that the duty to mitigate has been violated is on the

Defendants. *Carney v. Scott*, 325 S.W.2d 343, 345-46 (Ky. 1959). While the question of whether a plaintiff has taken reasonable efforts to mitigate their damages often presents factual issues, in this case, Robert Waxman has presented no evidence of "reasonable" steps that Fifth Third should have taken but failed to take in mitigation of its damages. In light of the evidence presented and Robert's arguments, a jury could not reasonably have determined that Fifth Third failed to take any reasonable steps to mitigate. Accordingly, the Court finds that this argument is not grounds for denying Fifth Third's motion for partial summary judgment.

## B. Debra Waxman's Defenses

Defendants assert that Fifth Third's motion for partial summary judgment as to the guaranties entered into by Debra Waxman should be denied because of Fifth Third's breach of the parties' "overarching agreement." Defendants assert that under the terms of this "overarching agreement," the guaranties executed by Debra Waxman were only intended to "paper" Mr. Berge's file, but were never intended to be enforced.

During his deposition, Robert Waxman testified that Mr. Berge "told me that he needed or wanted a guaranty from my wife that he could keep in the file and that he would never institute any proceedings or go after Debra for anything." Rec. 49, Robert Waxman Dep. at 76-77. Defendants assert that this oral "overarching agreement" is no less enforceable because it is not in writing and claim that it is not merged into the guaranty because it is a collateral agreement on a different, larger subject matter. *See Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003); *see also Texas Gas Transmission Corp. v. Kinslow*, 461 S.W.2d 69 (Ky. 1970). Defendants also contend that the parol evidence rule does not apply because evidence of the "overarching agreement" is being introduced to connect all of the loan agreements between the

14

parties to show that they are all part of one larger transaction. Essentially, Defendants claim that because Debra Waxman and Vandalay relied on this "overarching agreement" that their guaranties would not be enforced, Fifth Third's breach of that agreement excuses Debra's failure to make payments under the guaranties. However, Kentucky law appears contrary to this argument.

Under Kentucky law, oral agreements or representations cannot be proved or relied upon if they contradict a positive provision of the written contract. *Mario's Pizzeria, Inc. v. Fed. Sign & Signal Corp.*, 379 S.W.2d 736, 739 (Ky. App. 1964). More recently, the Kentucky Court of Appeals held that "as a matter of law, a party may not rely on oral representations that conflict with written disclaimers to the contrary which the complaining party earlier specifically acknowledged in writing." *Rivermont Inn., Inc. v. Bass Hotels Resorts, Inc.*, 113 S.W.3d 636, 640-41 (Ky. App. 2003). Here, the terms of the guaranties that Debra Waxman executed clearly contradict the terms of the alleged "overarching agreement" between the parties. The guaranties provide that:

> [t]his Guarantee contains the entire agreement of the parties and no oral agreement whatsoever, whether made contemporaneously herewith or hereafter, shall amend, modify or otherwise affect the terms of this Guaranty unless in writing and signed by the Bank.

Rec. 7. Amended Complaint, Exhs. 7, 10, 13.

Defendants arguments of an "overarching agreement" also creates a statute of frauds problem. Subsection nine (9) of the Kentucky statute of frauds provides that no action shall be brought to charge any person

> [u]pon any promise, contract, agreement, undertaking, or commitment to loan money, to grant, extend or renew credit, or make any financial accommodation to establish or assist a business enterprise including, but not limited to the purchase of realty or real property,

15

> but this subsection shall not apply to agreements pursuant to which credit is extended by means of a credit card or similar device, or to consumer credit transactions;
>
> unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

K.R.S. § 371.010(9).

In *Farmers Bank & Trust Co. of Georgetown, Ky. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4 (Ky. 2005), the Supreme Court of Kentucky recognized that subsequent agreements that materially alter the terms of agreements within the statute of frauds must also meet the statute of frauds' writing requirement. *Id.* at 8. In this case, the Court finds that the alleged "overarching agreement" between the parties would materially modify the guaranties executed by Debra Waxman. This is apparent because the "overarching agreement" which Defendants claim prohibits Fifth Third from calling on Debra Waxman to make good on her guaranties would render the guaranties meaningless.

Accordingly, since the Court finds that Defendants' claim that there was an "overarching agreement" that Debra Waxman's guaranties would never be enforced is inconsistent with the express terms of those guaranties, this argument is rejected.

**2. Fraud in the Inducement**

Defendants also assert that Fifth Third should not be permitted to recover from Debra Waxman because the bank fraudulently induced her to enter into the guaranties by promising that the guaranties would never be enforced. Kentucky law provides that where a contract is entered into in reliance on fraudulent representations, an action for rescission may be maintained. *Radioshack Corp. v. Comsmart, Inc.*, 222 S.W.3d 256, 261 (Ky. App. 2007). Defendants further

16

claim that parol evidence is admissible to show that the guaranties were induced by Fifth Third's fraudulent misrepresentations. *Id.* at 260.

Once again, this argument appears to be contrary to established Kentucky law. As noted above, parties may not base a fraud in the inducement claim on their reliance on oral representations contrary to the terms of written agreements or disclaimers that they have acknowledged in writing. *Rivermont Inn, Inc.*, 113 S.W.3d at 640; *see also Durbin*, 2006 WL 1510479 at *2. The guaranties executed by Debra clearly provide that:

> each Guarantor, jointly and severally, guarantees the prompt payment when due of all indebtedness and liabilities of Borrower of every kind, nature, and character including principal and interest and all renewals, extensions, and modifications thereof now existing or which hereafter may be incurred by Borrower to Bank....The liability of Guarantor hereunder shall be unconditional notwithstanding the enforceability, or invalidity of any Obligation of Borrower and shall survive the adjudication in bankruptcy of Borrower, or any compromise of any Obligation of Borrower to Bank by any order of any federal bankruptcy court or any other court of competent jurisdiction.

Rec. 7, Amended Complaint, Exhs. 7, 10, 13. Debra Waxman's claim for fraud in the inducement may not be based on alleged oral representations that are contrary to the terms of the guaranties that she executed. Consequently, any defense predicated on fraud in the inducement in this case fails as a matter of law and Debra is not entitled to rescission of the guaranties on this basis.

**C. Vandalay's Defenses**

Vandalay argues that Fifth Third's claims against Vandalay are barred by Fifth Third's failure to mitigate. Vandalay claims that Fifth Third did not act in a reasonable manner by failing to preserve the value of the equine collateral for Vandalay's loans. Apparently, when Fifth Third made a demand for payment to Vandalay, Vandalay owned two promising horses that served as

17

collateral for its loan. Rec. 49, Daniel Waxman Dep. at 26. Vandalay asserts that when the demand was made, additional training was required and stake payments needed to be made to allow the horses to continue racing. Vandalay requested that Fifth Third make these payments and claims that this gave Fifth Third the opportunity to increase the value of the equine collateral, or at least to preserve its existing value. Vandalay asserts that because Fifth Third refused this request, it failed to mitigate its damages.

Defendants have cited several cases standing for the general proposition that the duty to mitigate applies even when the non-breaching party is required to incur some expense in connection with the duty to mitigate. *See, e.g.*, *Howard v. Adams*, 246 S.W.2d 1002 (Ky. 1952); *Anderson v. Hayes*, 136 S.W.2d 558 (Ky. 1940); *Chesapeake & O. Ry. Co. v. Clifton*, 35 S.W.2d 884 (1931). In reviewing these cases, the Court finds that none of them inform the present inquiry or support a finding that Fifth Third's failure to advance Vandalay additional funds for training and stakes fees constituted a failure to mitigate. Defendants have not cited any case law suggesting a creditor has the duty to advance additional funds to its debtor to preserve the value of loan collateral. Indeed, the Court finds that requiring Fifth Third to take such a course of action would not be reasonable. *Morgan v. Scott*, 291 S.W.3d at 641 n.49.

Furthermore, Vandalay's argument is contrary to the terms of the Amended and Restated Loan and Security Agreement that Vandalay entered into with Fifth Third. Section 8(d) of that agreement governing the collateral provides that:

> [t]o the extent that applicable law imposes duties on the Secured Party to exercise remedies in a commercially reasonable manner, Debtor acknowledges and agrees that it is not commercially unreasonable for the Secured Party (i) to fail to incur expenses reasonably deemed significant by the Secured Party to prepare Collateral for disposition or otherwise to complete raw material or work in process into finished goods or other

18

finished products for disposition.

Rec. 7, Amended Complaint, Exhs. 2, 6, 9, 12.

As discussed previously in connection with Robert Waxman's mitigation defense, whether a plaintiff took reasonable steps to mitigate damages often presents factual issues that cannot be resolved on summary judgment. However, in this case, the Court finds that Vandalay has presented no evidence of "reasonable" efforts that Fifth Third should have or could have undertaken. Vandalay's argument that Fifth Third should have continued to advance funds for training and stakes fees to protect the equine collateral is not reasonable and inconsistent with the terms of the Amended and Restated Loan and Security Agreements executed by the parties. Accordingly, the Court finds that there is no evidence in this case from which a jury could reasonably determine that Fifth Third failed to take reasonable steps to mitigate its damages.

## IV. CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** that Plaintiff Fifth Third Bank's motion for partial summary judgment (Rec. 34) is **GRANTED.** Plaintiff Fifth Third Bank is granted partial summary judgment as follows:

(1)  Judgment against Defendants Robert K. Waxman and Vandalay Racing, LLC, jointly and severally, in the amount of $1,461,858.50, together with interest in the amount of $217.01 per diem from February 16, 2010 until fully paid;

(2)  Judgment against Defendants Vandalay Racing, LLC and Debra Waxman, jointly and severally, in the amount of $798,188.00, together with interest in the amount of $88.54 per diem from February 16, 2010 until fully paid;

(3)  Judgment against Defendants Vandalay Racing, LLC and Debra Waxman, jointly and severally, in the amount of $212,992.76, together with interest in the amount of $23.61 per diem from February 16, 2010 until fully paid;

(4)   Judgment against Defendants Vandalay Racing, LLC and Debra Waxman, jointly and severally, in the amount of $159,312.92, together with interest in the amount of $17.71 per diem from February 16, 2010 until fully paid.

(5)   The Court also finds that attorneys' fees, costs and expenses are awardable to Fifth Third Bank under the parties' written agreements because Fifth Third is the prevailing party in this action. However, the Court will reserve the issue regarding the amount of attorneys' fees, expenses and costs to be awarded so that Fifth Third may submit an Affidavit of the legal fees and expenses incurred through the date of the judgment so that amount can be included in the final order of judgment. Fifth Third Bank shall file an affidavit and other supporting proof as to the amount of attorneys' fees, expenses and costs incurred to date within fourteen (14) days of the entry of this Order. Defendants shall then have fourteen (14) days to respond.

(6)   With respect to future attorneys' fees, expenses and costs incurred during the post-judgment process, Fifth Third may apply for additional fees, expenses and costs as may be incurred in the future that are not included in Paragraph 5 upon application to this Court.

This the 6th day of July, 2010.

**Signed By:**

*Karen K. Caldwell*

**United States District Judge**